289 So.2d 373 (1973)
Lucille CLIFFORD
v.
RECREATION AND PARK COMMISSION OF the PARISH OF EAST BATON ROUGE.
No. 9593.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 15, 1974.
Writ Refused April 11, 1974.
*374 Alton T. Moran and Anthony J. Graphia, City-Parish Attys., Baton Rouge, for appellant.
Richard B. Nevils, Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
CRAIN, Judge.
The matter before us involves a drowning which occurred in the Capitol Avenue Swimming Pool in the City of Baton Rouge. The pool is used as part of a playground and is owned by the Recreation and Parks Commission for the Parish of East Baton Rouge (hereinafter referred to as BREC). This suit is brought by Lucille Clifford and Adam Banks Jackson, the divorced parents, of Adam Banks Jackson, Jr. who drowned in the above pool on May 17, 1969. Plaintiff-appellees ask for damages against BREC for the wrongful death of their son together with special damages in the form of funeral expenses. The trial court ruled in favor of the plaintiffs-appellees and awarded judgment against BREC and in favor of Lucille Clifford in the amount of $12,000.00 plus legal interest, and in favor of Adam Banks Jackson, against BREC in the sum of $7,500.00 and also for the additional sum of $200.00 representing the funeral expense.
The facts are as follows:
The swimming pool in question was not being used at the time of the accident as the swimming season had not yet begun. However, the pool was kept full of water and was enclosed by a chain link fence which was approximately five feet in height. On the top were three standards of barbed wire which slanted away from the pool. The fence in question was attached to a block type building located on the north end of the pool which was used as a bath house. The bath house was divided into a women's side on the east, and a men's side on the west. The access to the swimming pool consisted of two doors through each bath house, one on the pool side and one on the outside, and a gate on the southwest side of the fence. The doors and the gate were secured during times of nonuse by padlocks. The employees at BREC inspected the locks on a regular basis and the locks had been inspected the night before the tragedy occurred.
On the day of the accident, Adam Banks Jackson, Jr., age six, an older brother, age 8, and Barry Wilson, age ten entered the pool area. Adam Jackson, Jr., jumped into the pool and drowned. All attempted rescue efforts by passersby and firemen summoned to the scene failed.
The critical question of fact in the case involves the manner in which the boys entered the pool. Plaintiff-appellees contend that their son walked through open bath house doors. Appellants contend that the boys did not enter through the door to the bath house, that all gates and doors were locked and the boys gained entrance by climbing the fence. The trial court found as a matter of fact that the boys did enter through the doors to the bath house *375 and that the same were open allowing the boys to so enter. We have reviewed the record and find there is evidence to support such conclusion on the part of the trial court. Consequently, there is no manifest error in this particular finding.
Although the conclusion reached is that the doors were open and the boys entered through them, the evidence further shows that the doors were supposed to be locked and in fact, had been locked as late as the night before the accident. Under these circumstances the trial court based his finding of negligence on the part of BREC on his conclusion that they violated Title 8, Sec. 323A of the Baton Rouge City Code which provides as follows:
"No person, firm, or corporation in possession of land within the City or the Parish, upon which is situated a swimming pool or other outside body of water designed for or used for swimming, dipping, or immersion purposes by men, women, or children, of a minimum depth of eighteen (18) inches, shall fail to maintain on the lot or premises upon which such pool or body of water is located and completely surrounding such body of water, a five (5) foot chain link fence with no opening greater than two (2) inches in either dimension, or a 100% solid fence or wall constructed not less than five (5) feet in height with all supporting or structural members placed on the inside, provided, however, that a dwelling house or accessory building may be used as part of such enclosure."
Section "B":
"All gates or doors opening through such enclosure shall be equipped with self-closing and self-latching device designed to keep, and capable of keeping, such door or gate securely closed at all time when not in actual use; provided, however, that the door of any dwelling occupied by human beings and forming any part of the enclosure hereinabove required need not be so equipped."
The ordinance in question also provides that other protective devices or structures may be used so long as the degree of protection afforded by the substitute devices or structures is not less than the protection afforded by the fence, gate, and latch described herein.
The trial court found that BREC used padlocks on the doors to the bath house and the gate to the pool and that the use of such constituted negligence on BREC's part. The trial court's finding of negligence on the part of BREC was based on his interpretation of the ordinance in question to require that "self-locking" devices be utilized on doors and gates providing access to swimming pools when such pools are not in use. Since no "self-locking" devices were employed by the appellants, the trial court found that the appellants violated the standard of care as provided in the ordinance and were therefore negligent, and such negligence was the proximate cause of the accident which occurred. Appellants contend that the trial court's finding that the appellants did not comply with the ordinance in question was based upon a wrongful interpretation of the ordinance to require that the gates or doors be equipped with "self-locking" devices. They produced several witnesses including city inspectors and other experts who testified that the terms self-closing and self-latching do not mean self-locking. Our review of the records leads us to the conclusion that it is unnecessary to make a determination that "self-latching" as used in the ordinance means "self-locking." It is clear that the doors had been opened on numerous occasions by repeated acts of vandalism. The pictures reflect that these acts of vandalism were violent to the point of bending and tearing out locks and hasps bolted into reenforced metal on the doors. To hold that a "self-locking" device would stand up against this type of vandalism would be mere conjecture. Consequently, we conclude that even if the ordinance requires "self-locking" doors, the failure to provide such in this instance was not the *376 proximate cause of the doors being unlocked by acts of vandalism.
We do find, however, that BREC was negligent for violating the above referred to ordinance in other respects. Section "B" of the ordinance requires that gates and doors leading to swimming pools be equipped with "self-closing" as well as "self-latching" devices. The doors in question here were not equipped with self-closing devices. Consequently, when the locks were removed from the doors by acts of vandalism, the doors were left standing open. There is no question that an open door leading to a swimming pool created an attraction or implied invitation to enter to children of tender years such as the ones involved here. This attraction most certainly was greater where the doors stood open than it would have been had the doors been closed even though unlocked. Consequently, we hold that this deviation from the ordinance constituted negligence which was a proximate cause of the resulting death.
Due to the repeated acts of vandalism of which defendant was aware, we further hold that even without the ordinance cited above, defendants' failure to provide doors which would close though unlocked was negligence. Young children are naturally attracted to swimming pools and open doors to unguarded pools present great hazards. This hazard would be lessened by a door which would close even though unlocked. Under the circumstances present here, this is a precaution which a reasonable person would have taken.
The appellant raises several procedural irregularities allegedly committed by the trial court. The record reveals that the trial in this matter was held on February 6, 1973 and the case was continued until February 26, for oral arguments. The arguments were continued and on April 2, 1973, the case was reopened for the taking of additional testimony on motion of plaintiff-appellee. Appellants contend that this reopening was in contravention to the normal order of trial as prescribed by Louisiana Code of Civil Procedure, Article 1632. The trial court has great discretion in the manner in which it conducts litigation arising before it. The reopening of a case is discretionary with the trial court. Absent a clear abuse of this discretion, we are bound to sustain the trial court in its decision. We find no abuse of discretion in this case reopened primarily for the introduction of additional testimony in an attempt to establish the manner of entrance of the drowning victim into the pool area.
Appellants further contend that Title 8, Section 323A of the Baton Rouge City Code does not apply to BREC as it is not a "person" defined by this section of the City Code. We are aware, as pointed out by appellant, that this was not pled by the appellee; however, we feel that the evidence introduced at the trial is sufficient along with an examination of the codal articles in question for the trial court to find that the BREC was indeed governed by this ordinance.
Quantum or contributory negligence was not cited as error to this court. For the above reasons, the decision of the trial court is affirmed, all cost to be paid by appellant.
Affirmed.